UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN C. WILLINGHAM,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Case No. 17-11189

Arthur J. Tarnow
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 14, 15)**

## I.  PROCEDURAL HISTORY

    A.  Proceedings in this Court

On April 17, 2017, plaintiff Ryan C. Willingham filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J. Tarnow referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 15).

B.    Administrative Proceedings

Plaintiff filed an application for a period of disability and disability insurance benefits on March 4, 2011 (Tr. 338), [1] and an application for supplemental security income on March 10, 2011 (Tr. 332), alleging disability beginning on July 3, 2009.  (Tr. 216).  The claims were initially disapproved by the Commissioner on June 15, 2011.  (Tr. 194).  The Appeals Council remanded the matter back to the ALJ after considering the initial unfavorable decision.  (Tr. 216).  On remand, plaintiff appeared at a hearing on October 1, 2013, and the ALJ found plaintiff not disabled in a decision dated April 10, 2014.  (Tr. 216, 226).  The Appeals Council again remanded the case back to the ALJ to give further consideration to plaintiff's residual functional capacity.  (Tr. 20).  On March 16, 2016, plaintiff appeared at a hearing with counsel before Administrative Law Judge ("ALJ") Patricia S. McKay.  (Tr. 20).  In a decision dated July 7, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 33).  Plaintiff requested a review of this decision.  (Tr. 15-16).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 16, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr."

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff, born October 27, 1977, was 31 years old on the alleged disability onset date, July 3, 2009.[2]  (Tr. 32).  He has past relevant work as an inspection supervisor, quality control manager, insurance agent, financial sales, and telephonic sales.  (Tr. 31).   Plaintiff has a bachelor's degree and lives with his husband and two children, the youngest of whom is subject to a shared custody arrangement between the parents.   The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since July 3, 2009, the alleged onset date.  (Tr. 23).  At step two, the ALJ found that plaintiff's history of comminuted fractures of the base of the left 5th metatarsal with Austin bunionectomy of the left foot with partial tarsectomy of the 5th metatarsal of the left foot; major depressive disorder and bipolar disorder with unspecified depressive disorder and narcissistic personality disorder; and bulging

---

[2] At the administrative hearing plaintiff amended his onset date to August 20, 2010.  (Tr. 45).  However, throughout the ALJ's decision the ALJ refers to the onset date as July 3, 2009.  Plaintiff does not raise any error on the ALJ's part for this discrepancy.

lumbar discs indenting on the thecal sacs with suggestion of right and left

radiculopathy and annular tear, status post lumbar fusion were "severe" within the

meaning of the second sequential step.  (Tr. 23).  However, at step three, the ALJ

found no evidence that plaintiff's impairments singly or in combination met or

medically equaled one of the listings in the regulations.  (Tr. 24).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) and 416.967(a) but with the
> following limitations: he is able to engage in occasional
> climbing of stairs, crouching, crawling, kneeling,
> stooping, or bending; he must avoid workplace hazards
> such as dangerous, moving machinery and unprotected
> heights so he is not able to climb ladders ropes
> scaffolding; he is able to engage in occasional foot
> controls with the left lower extremity; he is able to
> engage in occasional contact with supervisors, co-
> workers, and the general public; and, he is limited to
> work that is simple, routine, and repetitive.

(Tr. 26).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 31).  At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform.  (Tr. 32).

B.   Plaintiff's Claims of Error

 Plaintiff raises two arguments on appeal.  First, plaintiff argues that the ALJ did not assess an accurate RFC which resulted in an erroneous finding of work at Step Five.  (Dkt. 14, at p. 12).  As part of this argument, plaintiff suggests that the ALJ's failed to comply with SSR 85-15.  More particularly, plaintiff contends that he cannot perform work on a sustained basis, and thus the RFC should account for his inability to work on a sustained basis.  According to plaintiff, the medical evidence and his own testimony demonstrate that he cannot stay focused and cannot carry out short and simple instructions.  (*Id.* at p. 13-14).  Consequently, plaintiff states that the decision cannot be upheld because the Social Security Administration did not follow its own regulations.  (*Id.* at p. 14).

Second, plaintiff argues that the ALJ improperly weighed the opinions of two treating physicians, Dr. Lingnurkar and Dr. Janviriya.[3]  (*Id.* at p. 14).  Plaintiff claims that the ALJ did not provide good reasons for discounting their opinions.  Instead, the ALJ simply stated that their assessments were "inconsistent" and did not provide further analysis.  (*Id.* at p. 15).  Plaintiff contends that the ALJ ignored

_____

[3] Plaintiff refers to this physician as Dr. Vicha.  However, it appears that the correct full name is Dr. Vicha Janviriya.  (Tr. 29, 594).  As such, the undersigned will refer to this doctor as Dr. Janviriya.

consistent treatment records and instead focused on "isolated" pieces of evidence which are not supported by the record as a whole.[4]  (*Id.* at 16).

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's decision that plaintiff retained the mental RFC "to engage in occasional contact with supervisors, co-workers, and the general public" and to handle "work that is simple, routine, and repetitive."  (Dkt. 15, at p. 6-7).  The Commissioner notes that the ALJ assigned great weight to state agency reviewing psychologist Dr. Moten, who concluded that plaintiff "appears capable of attending, comprehending, and following basic instructions….  Simple work activity is not precluded."  (*Id.* at p. 7; Tr. 176).  And, plaintiff did not attempt to demonstrate that the ALJ unreasonably relied in part on Dr. Moten's opinion.  The Commissioner contends that Dr. Moten's opinion is supported by the evidence.  (*Id.* at p. 8).  Further, plaintiff did not challenge the ALJ's reliance on evidence relevant to mental functioning; and the ALJ also reasonably relied in part on the opinions of psychologist Dr. Boneff who reviewed plaintiff's records and examined him on a consultative basis in May 2011 (Tr. 566-69) and January 2014 (Tr. 681-88).  The Commissioner acknowledges that plaintiff does challenge the ALJ's reliance on

_____

[4] Plaintiff also states that the ALJ did not follow the regulations and applicable case law in assessing the opinions of Drs. Rottenberg and Ritter, however, these physicians are not in the record at all.  It appears that plaintiff was likely referring to Drs. Lingnurhar and Janviriya.

Dr. Boneff's January 2014 opinion, stating that Dr. Boneff found problems in plaintiff's memory and attention. (*Id.* at p. 9). However, in the opinion, Dr. Boneff stated that, despite some problems with memory and attention, plaintiff had no limitations in understanding and carrying out simple instructions and in making judgments on simple work-related decisions "on a sustained basis ... mean[ing] ... eight hours a day for five days a week, or an equivalent work schedule." (*Id.* at p. 9; Tr. 685).

The Commissioner argues that plaintiff's mental RFC argument is essentially an invitation to the Court to impermissibly re-weigh the medical evidence. (*Id.* at p. 9). Further, the Commissioner contends that plaintiff's vague reference to SSR 85-15 and his contention that the ALJ did not comply with the definition of the "basic mental demands of competitive, remunerative, unskilled work," is not a reasonably developed argument. Therefore, it is waived. (*Id.* at p. 10).

Next, the Commissioner argues that the ALJ properly discounted treating psychiatrist Dr. Lingnurkar's opinion because the opinion is conclusory and lacks objective support. (*Id.* at p. 11) (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016); *Price v. Comm'r Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009)). The Commissioner contends that Dr. Lingnurkar's opinion is patently deficient because it consists primarily of checkbox markings and

unexplained, conclusory statements.  (Tr. 586-89, 652-55).  Accordingly, this patent deficiency renders the treating physician rule inapplicable to the opinion. The Commissioner argues alternatively, that the ALJ is not bound by a treating physician's opinion if it is not supported by and is inconsistent with medical evidence.  (Dkt. 15, at p. 13).  The ALJ accorded Dr. Lingurkar's opinion little weight because it is inconsistent with the record as a whole and is internally inconsistent.  (*Id.*; Tr. 29).  The Commissioner contends that the ALJ adequately explained the reasoning behind the weight determination; elsewhere in the decision the ALJ analyzed record evidence of plaintiff's mental functioning supporting substantial evidence for the ALJ's conclusion.  (*Id.* at p. 13-14).

The Commissioner also argues that the ALJ properly weighed Dr. Janviriya's opinion.  (*Id.* at p. 16).  According to the Commissioner, the ALJ did not err in the weight determination applied to Dr. Janviriya's opinion for the same reasons she did not err in weighing Dr. Lingnurkar's opinion: the ALJ discussed record evidence of plaintiff's impairments in the decision that is inconsistent with Dr. Janviriya's opinion, and discussed why the opinion was given little weight. (*Id.* at p. 17).

### D.    Plaintiff's Reply

In reply, plaintiff simply reiterates the arguments raised in his opening brief. (Dkt. 16).

III.   **DISCUSSION**

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

12

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

1.     Treating Physician[5]

The opinion of a treating physician should be given controlling weight if it

is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques," and (2) "not inconsistent with the other substantial evidence in [the]

---

[5] The Court's discussion concerning the treatment and weighing of the medical opinions is fundamental to its analysis relating to the ALJ's RFC assessment.  Therefore, the issues will be addressed in reverse order of how they were presented in the parties' briefing.

case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2).  Once an ALJ has determined that a treating source

opinion is not entitled to controlling weight, the ALJ must give good reasons for

the weight assigned to the opinion.  The reasons provided must be supported by

evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*,

710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which

include, (1) the length of the treatment relationship and frequency of examination,

(2) the nature and extent of the treatment relationship, (3) supportability of the

opinion, (4) consistency of the opinion with the record as a whole, and (5) the

specialization of the treating source.  *Id.; see also Wilson,* 378 F.3d at 544; 20

C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-

prong controlling weight test amounts to the failure to provide good reasons for

giving that opinion less than controlling weight.  *Gayheart* at 376-77.

      a.     Dr. Vicha Janviriya

In evaluating Dr. Janviriya's opinion, the ALJ stated,

> The undersigned gives limited weight to the opinion of
> Vicha Janviriya, M.D. (Ex. 13F).  He opined that the
> claimant could sit for 20 minutes at a time for 2 hours at
> a time and stand for 30 minutes at a time for 2 hours at a
> time (Ex. 13F/30).  Likewise, he opined that the claimant
> could rarely lift 10 pounds.  He further opined that the

> claimant's symptoms were frequently severe enough to
> interfere with his attention and concentration.
> Additionally, he opined that the claimant would likely be
> absent three days per month. This opinion is inconsistent
> with the record as a whole. The medical record shows
> that the claimant's medical treatment has resulted in
> substantial improvements. He was noted for continuing
> to improve after his lumbar fusion (Ex. 34F/45). His
> implants were found to be stable and his lumbar fusion
> was noted for doing well (Ex. 34F/43). Accordingly, the
> opinion of Dr. Janviriya is given limited weight.

(Tr. 29). In the view of the undersigned, the ALJ adequately comported with the

treating physician rule in discounting Dr. Janviriya's opinion. The ALJ concluded

that the opinion was inconsistent with the other medical evidence and went on to

discuss records demonstrating the same, which is sufficient to indicate that she was

giving the opinion less than controlling weight. *See Wilson*, 378 F.3d at 544. The

ALJ further provided good reasons for discounting the opinion. Specifically, Dr.

Janviriya rendered his opinion in January 2012. (Tr. 591-94). Dr. Janviriya

largely attributed the limitations to plaintiff's lumbar back pain. (Tr. 591).

However, the record contained evidence demonstrating significant improvement

relating to plaintiff's back. For instance, the ALJ cited to subsequent records

documenting plaintiff's lumbar fusion surgery, facet blocks, and sacroiliac joint

injections. These records largely demonstrate that plaintiff's pain decreased

through the use of these procedures. Plaintiff had lumbar fusion surgery in May

2014. (Tr. 865-66). And, as the ALJ stated, after his lumbar fusion he was

reported to be progressing well and his back pain was better than before the surgery. (Tr. 1408). The physician also noted that his implants looked stable on x-ray. (*Id.*). In a September 5, 2014 examination, his surgeon noted that his back was improving after the surgery, and plaintiff stated that his leg symptoms had almost completely resolved. (Tr. 1410). On physical examination there was no significant tenderness to palpation and no overall weakness. (*Id.*). His lumbar radiculopathy was noted as "improving." (*Id.*). Elsewhere in the opinion[6] the ALJ also noted that plaintiff had a marked decrease in back pain with facet blocks. (Tr. 1065 (May 2015); Tr. 1283 (April 2015); Tr. 1210 (March 2016)). Further, multiple records indicate marked decrease in back pain with sacroiliac joint injections. (Tr. 726, 1186, 1192, 1303, 1309). In April 2015 plaintiff had another MRI of his low back. (Tr. 877). This MRI was a "fairly unremarkable study" and showed normal postoperative changes. (Tr. 1434). Although plaintiff still had pain in his low back, his surgeon noted it was not clear where the pain was coming from, but that he would assess healing with a CAT scan at a later date. (*Id.*). Further, the ALJ noted the inconsistency of plaintiff's daily activities and his

---

[6] The Sixth Circuit has repeatedly emphasized the need to review the ALJ's decision as a whole. "It is proper to read the ALJ's decision as a whole" and "it would be a needless formality to have the ALJ repeat substantially similar factual analyses" at both Steps Two and Four. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *see also Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").

complaints of disabling back conditions.  The ALJ stated, "He reported that he has

difficulty with lifting, standing, walking, and sitting (Ex. 5E/6).  However, he

acknowledged that he was able to prepare meals; live in a two-story house; go

shopping in stores for food, clothes, and personal care items; and care for his

children (Ex. 5E/5)."  (Tr. 28).  Having cited to medical records revealing

improvement in his back symptoms and plaintiff's own testimony concerning his

activities, the ALJ provided good reasons for discounting the opinion.  In

discussing these records, the decision adequately undermined the supportability

and consistency of the opinion with the other evidence in accordance with the

regulations.

The undersigned notes that the ALJ did not discuss the nature and extent of

the treating relationship, or whether Dr. Janviriya was a specialist in a particular

medical discipline.  However, as the Sixth Circuit held in *Francis v. Comm'r of

Soc. Sec.*, 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of

Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is

not "a procrustean bed, requiring an arbitrary conformity at all times."  In

*Francis,* the ALJ did not discuss some of the factors set out in 20 C.F.R.

§ 404.1527(d)(2), such as the length, nature, and extent of the treating relationship,

but the court held that he did not have to do an exhaustive factor-by-factor

analysis.  *Id.* at 804-05.  As long as the goal of the regulation is met, i.e. providing

18

a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless.  The ALJ's discussion met the goal of the regulation as the reasons for discounting the opinion are understandable: plaintiff's improvement and daily activities, as described above, do not support a finding of disability.

Finally, having discussed medical evidence of improvement in his back impairment, the undersigned finds that the ALJ's assessment of Dr. Janviriya's opinion is supported by substantial evidence.

   b. Dr. Lingnurkar

In assessing the weight to give to Dr. Lingnurkar's opinion, the ALJ stated,

> The undersigned gives limited weight to the opinion of Sudhir Lingnukar, M.D. (Exs. 12F; 18F).  He reported that the claimant was unable to meet competitive standards with carrying out very short and simple instructions and maintain attention for two-hour segments.  He further opined that the claimant was seriously limited but not precluded to: sustaining ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, and making simple work-related decisions.  Additionally, he opined that the claimant would be absent on average, three days per month.  This opinion is inconsistent with the record as a whole.  Moreover, this opinion does not reflect the claimant's treatment and significant improvement.  Notwithstanding, Dr. Lingnukar's opinion is internally inconsistent; he opined that the claimant was limited but satisfactory with interacting with the general public and maintaining socially appropriate behavior, yet he conversely opined that the claimant was seriously limited

in working in proximity to others and unable to meet
competitive standards with getting along with coworker
or peers.  Accordingly, the opinion of Dr. Lingnukar is
given limited weight

(Tr. 29).  The Commissioner argues that Dr. Lingnurkar's opinion should not be

treated as a treating physician's opinion because it is patently deficient since it

consists primarily of checkbox markings and unexplained, conclusory statements.

The undersigned agrees with the Commissioner: Dr. Lingnurkar's opinion is

"so patently deficient that the Commissioner could not possibly credit it."

*Wilson,* 378 F.3d at 547.  As stated above, the regulations require an ALJ to

provide good reasons for giving the opinion of a treating physician less than

controlling weight.  However, there are instances in which failure to discuss the

"good reasons" factors is harmless error.  One such instance is where the treating

source's opinion fits the patently deficient level articulated in *Wilson*.  Where a

physician's opinion consists primarily of filling in check boxes without an

explanation in support, such an opinion is patently deficient.  *See Hernandez v.*

*Comm'r of Soc. Sec.*, 644 fed appx 468, 474-75 (6th Cir. 2016) ("We have

previously declined to give significant weight to rudimentary indications that lack

an accompanying explanation."); *Keeton v. Comm'r of Soc. Sec.,* 583 Fed.Appx.

515, 525 (6th Cir.2014) (quoting SSR 96–2p, at *1, which states that "[a] case

cannot be decided in reliance on a medical opinion without some reasonable

support for the opinion"); *see also Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Williams v. Comm'r of Soc. Sec.*, 2018 WL 1322396, at *7 (E.D. Mich. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1316167 (E.D. Mich. Mar. 14, 2018) (Opinion entitled only to little or no weight where it consists of a "check-the-box" form that is unaccompanied by any meaningful explanation).  In *Jackson v. Comm'r of Soc. Sec.*, 2017 WL 4699721 (E.D. Mich. Oct. 19, 2017), the opinion at issue was in check-box format.  *Id.* at *7.  Citing *Hernandez*, the court stated that, as such, the opinion was "an impotent addition to the record with little to no persuasive value— to hold otherwise would neglect its glaring lack of narrative analysis."  *Id.*; *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

Here, Dr. Lingnurkar listed plaintiff's medications and stated that plaintiff's symptoms meet the DSM IV.  (Tr. 586).  He then checked off signs and symptoms from a long list, and checked a series of boxes indicating how limited plaintiff is in certain work functions.  (Tr. 587-89).  When asked to describe additional reasons not already covered in the form on why the patient would have difficulty working at a regular job on a sustained basis, Dr. Lingnurkar merely stated, "cannot

function or focus."  (Tr. 589).  This check-box opinion contains no other attempt at explaining the check marks or why or how plaintiff is so functionally limited in a work setting.  As such, the undersigned concludes that the opinion is "weak evidence at best" and thus is "so patently deficient that the Commissioner could not possibly credit it."

Moreover, the ALJ's discussion of the medical evidence regarding plaintiff's mental impairments is sufficient to support the weight determination and to allow the undersigned to understand the reason for that determination.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions); *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("Violation of the [treating physician rule] constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms.").  Before assigning weight to the various medical opinions in the record, the ALJ stated in regard to plaintiff's mental impairments,

Concerning the claimant's mental impairments, he is not limited to the degree that he alleged.  He alleged that he has difficulties with memory, concentration, completing tasks, and getting along with others (Ex. 5E/6).  However, he acknowledged that he is able to prepare meals; go shopping in stores; maintain social relationships; and care for his children, which includes helping them with their homework (Ex. 5E/2-7; Hearing Testimony).  The record show that he was repeatedly found to have a normal mood and affect (Exs. 15F/8; 22F/12; 25F/10).  Likewise, he was noted for having normal judgment, behavior, and thought content (Ex. 15F/8).  Moreover, he was found to have no evidence of an overt thought disorder (Ex. 20F/2).  Likewise, he acknowledged he was doing okay (Ex. 26F/16).  Despite reporting social functioning difficulties, he acknowledged that he gets along well with others (Ex. 20F/2).  Therefore, the objective medical evidence does not support the duration, frequency, and severity of the claimant's impairments causing limitations that exceed those specified in the residual functional capacity.

(Tr. 28).

The ALJ's discussion of the medical evidence indirectly attacks the supportability of Dr. Lingnurkar's opinion, such that the ALJ has met the goals of the regulation—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms.  As the ALJ noted, plaintiff's daily activities do not support the contention that his mental impairments are disabling.  Further, the ALJ gave considerable weight to consultative examiner Dr. Boneff's opinion.  (Tr. 30).  Dr. Boneff opined that plaintiff had no difficulty understanding, remembering, and

carrying out simple instructions.  (Tr. 569, 685).  Dr. Boneff further noted that

plaintiff presented with no evidence of an overt thought disorder, that he answered

questions in a logical, goal-oriented manner without loose, circumstantial, or

tangential associations.  (Tr. 682).  These findings belie the contention that plaintiff

cannot work because he cannot focus or concentrate.  Dr. Lingnurkar's treatment

records are at times inconsistent with his opinion.  For example, in October 2013,

he encouraged plaintiff to go back to work.  (Tr. 961).  Plaintiff on multiple

occasions relayed to Dr. Lingnurkar that he was doing okay.  (Tr. 641, 644, 646,

966, 974, 977).  The ALJ also noted inconsistency within Dr. Lingnurkar's

opinion: that plaintiff was able to work with the general public but was seriously

limited in the ability to in close contact with co-workers.[7]  In all of Dr.

Lingnurkar's treatment notes, plaintiff's inability to concentrate or focus came up

only once, in March 2011.  (Tr. 546).  Other medical records also noted normal

mood and affect (Tr. 614, 618, 704, 791, 815, 828, 835, 848, 1431) and normal

judgment and thought content (Tr. 614).  Further, the ALJ gave great weight to

state agency psychological consultant, Dr. Moten's opinion, a determination that

plaintiff does not challenge.[8]  Dr. Moten opined that plaintiff was moderately

---

[7] Plaintiff contends that this is not an inconsistency because it is more stressful to work
with co-workers than with the general public.  However, plaintiff cites no authority for this
assertion.
[8] It is well-established that, under certain circumstances, opinions from reviewing State
agency physicians "may be entitled to greater weight than the opinions of treating or examining
sources."  SSR 96-6p; 1996 WL 374180, at *3; *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. Appx.

limited in his ability to maintain attention and concentration and that plaintiff is

capable of attending, comprehending, and following basic instructions.  (Tr. 187).

The ALJ's discussion of this evidence is sufficient to meet the goal of the

regulation, to the extent the opinion should be given treating physician deference at

all.  The undersigned is able to trace the ALJ's reasoning for discounting Dr.

Lingnurkar's opinion, i.e. that plaintiff is capable of sustained work, that he has

normal thought content, and can interact with others.  As such, any error in the

ALJ's treatment of the opinion is harmless.  Moreover, the evidence recited above

provides substantial evidence for the weight determination.  Therefore, the

undersigned finds no basis on which to disturb the ALJ's determination.

2.    RFC

Plaintiff contends that the RFC is inaccurate because it does not contain a

limitation to account for plaintiff's alleged inability to perform work on a sustained

basis due to his mental impairments.  Plaintiff points to Dr. Lingnurkar's opinion

and his own testimony as evidence that he cannot work on a sustained basis.  (Dkt.

---

636, 642 (6th Cir. 2013) ("[O]pinions from State agency medical and psychological consultants
... may be entitled to greater weight than the opinions of treating or examining sources.")
(quoting SSR 96-6p, 1996 WL 374180, at *3); *Benson v. Colvin*, 2014 WL 3919577, at *9 (E.D.
Ky. Aug. 11, 2014) ("[I]t is not a per se error to give more weight to the opinion of a non-
examining physician than that given to an examining or treating physician's opinion.").  Indeed,
the opinions of state agency medical and psychological consultants may be entitled to significant
weight where they are supported by record evidence.  *Lee v. Comm'r of Soc. Sec.*, 529 Fed.
Appx. 706, 713 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i)).

14, at p. 13-14).  The undersigned suggests, however, that the RFC is supported by substantial evidence, discussed above, and properly leaves out such a limitation.

As discussed above, the ALJ gave great weight to consultants Drs. Boneff and Moten, and properly discounted Dr. Lingnurkar's opinion.  Drs. Boneff and Moten found plaintiff capable of performing work on a sustained basis and that plaintiff is capable of understanding, remembering, and carrying out simple instructions.  There is no opinion given considerable weight in the record stating that plaintiff cannot perform work on a sustained basis or otherwise providing functional limitations due to his mental impairments.  Where the record contains a diagnosis but no functional limitations associated with the diagnosis, the failure to include any such limitations is not error.  *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health & Human Servs*., 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec*., 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*,  2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."). Here, plaintiff was diagnosed with mental impairments, but there is no credible

evidence that the impairments are disabling.  Finally, the ALJ also relied on plaintiff's daily activities in determining that his mental impairments do not keep him from sustained work activity.

The ALJ did not err in assessing plaintiff's mental RFC.  The medical evidence, as discussed in some detail above, does not support a limitation in concentration or maintaining focus.  Rather, the evidence shows that plaintiff can sustain simple work.  As such, the RFC is supported by substantial evidence, and the undersigned finds no basis on which to disturb the ALJ's determination. Because the RFC accurately portrays plaintiff's limitations, there is no error at Step Five.

Plaintiff also states that the ALJ did not comply with SSR 85-15.  However, plaintiff does not provide any argument on SSR 85-15 and makes no attempt at developing an argument explaining how the ALJ failed to comply with the ruling. Instead, he merely cites the ruling and provides a quotation.  (Dkt. 14, at p. 12-13). Thus, whether the ALJ complied with SSR 85-15 will not be addressed. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citations omitted); *see also Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *3 (E.D.

Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at

*8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the

administrative record for evidence to support [Plaintiff's] 'argument' or find law

supporting [his or] her claims. This Court does not conduct a de novo review in

social security proceedings, and certainly cannot be expected to craft an argument

on [Plaintiff's] behalf.")).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 22, 2018

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 22, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov